**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

MICHAEL O'DELL DENNIS,

        Petitioner,

   v.                             **CIVIL ACTION NO. 2:05cv88**
                                        **(Judge Maxwell)**

EVELYN F. SEIFERT, Warden,

        Respondent.

## REPORT AND RECOMMENDATION
## 28 U.S.C. § 2254

On December 1, 2005, the petitioner, Michael O'Dell Dennis, filed a Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody by and through his counsel, Andrew M. Price. On that same date, counsel also filed the Petitioner's Brief In Support of Habeas Corpus Petition. On March 24, 2006, the respondent was ordered to show cause why the writ should not be granted. On April 24, 2006, the respondent filed her Answer as well as a Consolidated Motion To Dismiss, Motion For Summary Judgment, and Memorandum In Support thereof. On May 19, 2006, the petitioner filed his Response to Respondent's Consolidated Motion To Dismiss and Motion For Summary Judgment.

This matter is pending before me for initial review and report and recommendation pursuant to Standing Order of Reference for Prisoner Litigation Filed Pursuant to 28 U.S.C. §2254 (Standing Order No. 5), LR PL P 83.13.

## I. Procedural History

On September 21, 2001, the Ohio County Grand Jury returned an indictment against the petitioner for one count of Kidnapping (W.Va. Code § 61-2-14(a); one count of First Degree

Robbery (W.Va. Code § 61-2-12(a)); two counts of Second Degree Sexual Assault (W.Va. Code § 61-8B-4(a)(1); one count of Abduction with Intent to Defile (W.Va. Code § 61-2-14); Violation of a Protective Order (W.Va. Code § 48-2A-10d); and Domestic Battery (W.Va. Code § 61-2-28(a)). (Doc. 12-2)

On August 22, 2002, after a three-day trial, the jury returned a verdict finding the petitioner guilty on Counts One (Kidnapping), Three (Second Degree Sexual Assault); Four (Second Degree Sexual Assault); Six (Violation of Protective Order), and Seven (Domestic Battery). The jury also convicted the petitioner of the lessor-included offense of Second-Degree Robbery on Count Two (First Degree Robbery) but acquitted him of Count Five (Abduction with Intent to Defile). (Doc. 12-3)

On October 28, 2002, the trial court sentenced the petitioner to Life with Mercy on the kidnapping count, 5-18 years on the robbery count, 10-25 years for each of the two sexual assaults, one year on the violation of the protective order, and one year on the domestic battery count. The court ordered the kidnapping and each of the two sexual assault sentences to run consecutively. The court ordered that the balance of the sentences were to run concurrently with the kidnapping and sexual assault sentences. (Doc. 12-4)

## II. Issues Presented

### A. Direct Appeal

On direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals [hereinafter referred to as WVSCA], the petitioner asserted the following errors at trial:

1. The Circuit court erred by denying the Defendant's Motion For Acquittal on the sexual assault and robbery charges where those acts were alleged to have happened entirely in Ohio and not West Virginia.

2.    The Circuit Court erred by not removing a juror for cause after evidence was discovered of a relationship between the juror and the Prosecutor which had not been disclosed during *voir dire*.

3.    The Circuit Court erred by refusing to allow the Defendant to introduce expert testimony to rebut evidence introduced by the state to show that the accuser had characteristics of battered woman's syndrome, which the state introduced to explain the accuser's failure to avail herself of opportunities to escape.

4.    The Circuit Court erred by allowing the state's witnesses to testify about the Defendant's supposed prior bad acts.

5.    The Circuit Court erred by allowing the state's witnesses to repeat the accuser's highly prejudicial statements, which the Court wrongly allowed on the basis that the testimony was not offered for the truth of the statement but instead only to show what actions the witnesses took after hearing her statement.

6.    The Court erred by allowing Nurse Grimm to testify that Ryanna's injuries were consistent with sexual assault.

7.    The failure of the police to conduct an adequate investigation and to obtain and preserve exculpatory evidence prejudiced the defendant and violated his constitutional rights.

8.    The Court erred by not introducing a corrective instruction to offset the harm caused by several improper and highly prejudicial statements made by the prosecuting attorney in his closing arguments.

(Doc. 12-5).

On September 25, 2003, the WVSCA granted the petitioner's petition for direct appeal.

(Doc. 12-6)  On December 1, 2004, the WVCSA decided <u>State v. Dennis</u>, 607 S.E.2d 437 (W.Va. 2004), in which it overturned the petitioner's convictions for sexual assault and robbery, affirmed his convictions for kidnapping, domestic battery, and violation of protective order, and remanded the matter to the circuit court for further proceedings.

**B.  <u>Federal Habeas Petition</u>**

Petitioner's federal habeas petition raises the following grounds for relief:

1. In violation of the petitioner's due process as established by the Fourteenth Amendment of the United States Constitution, the Court refused to grant a new trial despite the presence on the jury of a juror who should have been automatically disqualified for cause.

2. In violation of the petitioner's right to due process, the Court refused to grant a new trial despite the police conducting their investigation in bad faith.

3. In violation of the petitioner's Sixth Amendment right to confront witnesses against him and his right to counsel, the Court refused to grant a new trial despite the petitioner being barred from challenging a theory presented by the State.

4. In violation of his rights of confrontation, cross-examination, freedom of speech, and due process, the Court allowed the State to present evidence of unrelated, prejudicial prior bad acts by the petitioner, but prohibited the petitioner from mentioning the accuser's false rape and kidnapping allegations.

5. In violation of the petitioner's Sixth Amendment rights of confrontation, cross-examination, and assistance of counsel, the Court refused to grant a new trial despite the Circuit Court's failure to issue corrective instructions in response to remarks made by the prosecuting attorney during closing argument.

6. In violation of the petitioner's Sixth Amendment rights of confrontation and cross-examination, the Court refused to grant a new trial despite the Circuit Court allowing the State to unfairly bolster the accuser's testimony through the hearsay testimony of multiple witnesses.

7. The totality of the violations amounts to such prejudice against the defendant that his incarceration is fundamentally unjust.[1]

## C. **Respondent's Answer**

In her answer, the respondent generally denies that any violation of petitioner's rights occurred. Moreover, in the event that this Court determines that this matter is not ripe for summary adjudication, the respondent reserves the right to present further evidence and argument in opposition to the petitioner's claims.

## D. **Respondent's Motion to Dismiss or for Summary Judgment**

---

[1]The petitioner did not raise this ground in his Application for Habeas Corpus Relief but does raise it in his Brief.

In her motion to dismiss or for summary judgment, the respondent apparently concedes that the petitioner has had full opportunity to present his claims to the state courts and that the claims raised in the instant petition, except the cumulative error allegation raised in the brief, are fully exhausted.[2]   However the respondent asserts that the petitioner has failed to demonstrate that his confinement is imposed in contravention of the rights and protections guaranteed under the Constitution and requests the petition be dismissed.

In support of her motion to dismiss, the respondent asserts that the petitioner raises claims of both state and federal constitutional violations.  However the respondent asserts that violations of state law and procedure do not form the basis for federal habeas relief and petitioner's state based claims should be dismissed.

In support of her motion for summary judgment, the respondent asserts that the petitioner has failed to establish that he is entitled to any relief and that summary judgment is therefore appropriate.   Specifically, the respondent argues that: 1) the petitioner's trial was conducted before an impartial jury; 2) the scope of the state's investigation did not violate the petitioner's rights under Brady and Youngblood; 3) the petitioner does not have a Sixth amendment right to introduce evidence rebutting a theory never advanced by the State; 4) the petitioner's "prior bad acts" claim is a matter of state evidentiary law and not cognizable in federal habeas; 5) by failing to contemporaneously object to the state's closing argument, the petitioner procedurally defaulted the claim; 6) to the extent the petitioner objected to testimony from other witnesses repeating the

_____

[2]To the extent that an argument could be made that this allegation is unexhausted, "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2)

5

victim's allegations, he raised a matter of state law not cognizable in federal habeas; and 7) since

the petitioner has not proven constitutional error, his cumulative error claim is without merit

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual

allegations. <u>Walker v. True</u>, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to

state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and

construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law,

that no relief could be granted under any set of facts that could be proved consistent with the

allegations of the complaint. <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984); <u>Conley v.

Gibson</u>, 355 U.S. 41, 4506 (1957).

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment

motions in habeas cases. <u>See Blackledge v. Allison</u>, 431 U.S. 63, 80 91977). So too, has the

Fourth Circuit Court of Appeals. <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991). Pursuant to

Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it

must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal

Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla

of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## C. Federal Habeas Review Under 28 U.S.C. § 2254

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(q). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal Court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law. Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual

issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" <u>Tucker v. Ozmint</u>, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993); <u>Richmond v. Polk</u>, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, <u>supra</u>.

## <u>IV. Analysis</u>

### A. <u>Ground One - The Petitioner's Right to Due Process Was Violated by Juror Misconduct</u>

In his first ground for relief, the petitioner alleges that his due process right to an impartial jury was violated when a juror failed to reveal that her mother had previously worked for the prosecuting attorney's office, and was presently working for the Ohio County Circuit Clerk's Office. In addressing this ground for relief, the WVSCA concluded that there was no evidence of prejudice to the petitioner because no information was obtained from the juror that would have made her subject to challenge for cause. Petitioner argues that the holding ignores clear precedent in West Virginia and deprives him of procedural safeguards that are regularly afforded to all other individuals tried in West Virginia.

A review of the record in this matter reveals that during *voir dire,* the trial court asked the jury panel if any were related by blood or marriage, associated with, or acquainted with any person currently employed with the prosecutor's office. (Doc. 12-9, pgs. 31-36) In addition, the court asked if any members of the panel, or their immediate families were current or former

employees of any state, federal, or municipal law enforcement agencies.  (Doc. 12-9, pg. 78)  Finally, the court asked if any members of the panel, or their immediate families were employees of any state, federal or local governmental agency other than a law enforcement agency.  Aside from noting that she was acquainted with the prosecuting attorney, Mr. Smith, the juror in question did not respond to the court's questions.[3]

On the last day of trial, defense counsel informed the court that the mother of the juror in question was presently employed as a deputy clerk at the Ohio County Clerk's Office and had also worked for the county prosecutor's office from late 1996, or early 1997, to January of 1999.  (Doc.12-12, pgs 634-5, 665-66.)  Therefore, defense counsel requested a mistrial.  The court then conducted an *in camera* hearing during which the court and the state questioned the juror.  Defense counsel, for whatever reason, did not pose any questions to the juror.

Following the *in camera* hearing, defense counsel noted that had he been aware of the employment history of the juror's mother, he would have exercised a peremptory challenge which would have made the jury panel different.  Accordingly, defense counsel renewed his motion for a mistrial.  (Doc. 12-12, pg. 672) Before ruling on the motion, the trial judge inquired whether counsel would agree to proceed with eleven jurors.  Although the state was willing to do so, the petitioner would not waive his right to a 12-person jury. (Doc. 12-13, pg. 675) Upon consideration, the trial judge denied the motion for a mistrial finding that the "representation by the defendant that he would have exercised a peremptory challenge....while it may be a close question" was insufficient to grant a mistrial based upon the record that was developed. (Doc. 12-13, pg. 676).

_____

[3]Specifically, the juror noted that she had known Mr. Smith for years and that he had been the attorney against her at one time. (Doc. 12-9, pg. 33-34).

The WVSCA affirmed the trial court's ruling.  State v. Dennis, 607 S.E.2d at 455-56. Citing State v. Beckett, 310 S.E.2nd 883 (W.Va. 1983), petitioner maintains that in so doing, the WVSCA ignored its own ruling that  a potential juror closely related by blood or marriage to either the prosecuting or defense attorneys involved in the case or to any member of their respective staffs or firms should automatically be disqualified.  However, the petitioner's reliance on this case is misplaced.  Here, the juror's mother was not currently employed by the prosecutor's staff.  In fact, she left that employment in January of 1999, and the events leading to the petitioner's indictment did not occur until July of 2001, more than two years after she left the employment of the prosecutor's office.  Accordingly, there would be no basis for an "automatic disqualification."

In affirming the trial court's ruling, the WVSCA applied the standard first set forth by the United States Supreme Court in McDonough Power Equipment, Inc. V. Greenwood, 464 U.S. 548, 556 (1984).  As noted by the WVSCA, in McDonough, the United States Supreme Court established the test for determining whether a new trial is required when there is juror deceit during voir dire.  This test requires that the individual requesting a new trial must first demonstrate that a juror failed to answer honestly a material question presented on *voir dire,* and second, must show that a correct response would have provided a valid basis for a challenge for cause.   Noting that: "[a]ppellant's counsel did not question the juror during the hearing and did not demonstrate how a correct response by the juror would have provided a valid basis to sustain a challenge for cause or show that the juror was actually biased," the WVSCA concluded that the trial court properly employed its discretion by refusing to grant a mistrial. Dennis at 456.

Under 42 U.S.C. § 2254(e)(1), a factual determination made by a state court is presumed to be correct.  Here, the petitioner has made no showing that the decision of the state court was

unreasonable in light of the facts presented in the state proceeding. Moreover, the determination of the state court was not contrary to or an unreasonable application of clearly established federal law. Thus, the petitioner is not entitled to relief on this claim.

**B.  Ground Two - The Petitioner Was Deprived Of His Due Process By The Bad Faith Investigation Undertaken By The Police**

The petitioner next contends that he was deprived of his Constitutional right of due process by the bad faith investigation undertaken by the police, an investigation that he argues intentionally avoided locating exculpatory evidence. More specifically, the petitioner alleges that his versions of the events surrounding the crimes for which he was convicted differed dramatically from those of the victim.   Because there was no witness with them throughout the entire period of the alleged kidnapping and assault, the only way to determine the truth of what happened was to locate witnesses who could verify or refute individual aspects of the differing versions put forth by the petitioner and the victim. Despite "the critical importance" of such an investigation, the petitioner maintains that the investigating officers passed up every single opportunity available to them to verify the events surrounding the charged crimes. This included their failure to obtain videotape surveillance from any of the numerous locations visited by the petitioner and the victim during the course of the alleged criminal acts, their failure to search the car driven by the petitioner for evidence that would have supported some of the petitioner's version of the events, their failure to search the "wide spot" for evidence that would have supported some of the petitioner's version of the events, and their failure to search for any witnesses at various locations critical to the charged crimes.

There is no question "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or

punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. State of Maryland, 373 U.S. 83, 86 (1963). Furthermore, the Due Process Clause of the Fourteenth Amendment to the United States Constitution imposes upon the State a duty to preserve exculpatory evidence for potential use by the defendant once the evidence has been acquired. Arizona v. Youngblood, 488 U.S. 51 (1988). However, the Due Process Clause requires a different result when dealing with the failure of the State to preserve "evidentiary material which no more can be said than it could have been subjected to tests, the results of which might have exonerated the defendant." Arizona v. Youngblood, 488, U.S. 51, 56 (1988). In that instance, the United States Supreme Court holds "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. Furthermore, the duty to preserve and/or produce potentially exculpatory evidence does not expand to a duty to gather evidence for the defense, search for exculpatory evidence, conduct tests, or pursue every angle in a case. See State v. Wilson, 2005 WL 678933 (Ohio App. 2 Dist); United States v. Beaver, 524 F.2d 963 (5th Cir. 1975); State v. Pecor, 972 P.2d 737 (1998); State v. Bernson, 700 P.2d 758.

In the case at hand, there is no allegation that the prosecution suppressed evidence favorable to the petitioner. Nor, can the petitioner allege that the State failed to preserve exculpatory evidence for his use once that evidence had been acquired because there has been no showing that there was ever any exculpatory evidence in the State's possession. Here, the petitioner can only allege that the State failed to preserve evidence that might have exonerated him had it been subjected to tests.[4] The test then becomes whether the police acted in bad faith.

_____

[4] The police did have the car that the petitioner was driving during the time the alleged criminal acts occurred. That car was returned to its owner, the petitioner's father,

Petitioner has not established that the State had any knowledge that evidence in the car would have exculpated him, nor has he provided any other evidence indicative of bad faith. Furthermore, inasmuch as the State has no duty to gather evidence for the defense or search for exculpatory evidence, the petitioner has not established a denial of due process that would require this Court to grant his writ on this ground.

**C. Ground Three - The Petitioner Was Deprived of His Right To Confront The Witnesses Against Him When He Was Barred From Challenging A Theory Presented By The State**

Pursuant to this ground for relief, the petitioner contends that he was deprived of his Sixth Amendment right to confront the witnesses against him and to the assistance of counsel, when he was barred from challenging a theory presented by the State. More specifically, the petitioner alleges that he was denied the opportunity to refute the State's theory that the victim suffered from Battered Spouse Syndrome [hereinafter referred to as BSS].

There is no disagreement between the parties, that prior to trial, the State contemplated advancing the theory that the victim suffered from BSS to explain why she failed to take advantage of several possible opportunities to escape from the petitioner. Upon reviewing the reports from its own experts, the defendant's expert, and the independent expert hired by the trial court, the State noted that it would not proceed under this theory.[5] Upon hearing this, the trial

---

and according to the petitioner, any search for exculpatory evidence would then have been futile. The petitioner maintains that had the police searched for stains before they returned the car, they could have verified his version of some of the events that transpired. In addition, he alleges that had they dusted the steering wheel for prints before they returned the car, they again could have found evidence that supported his version of some of the events.

[5]It would appear that the State's expert, Dr. Judy King Smith, diagnosed the victim as suffering from BSS. However, she reached that diagnosis before she met with the victim. The defense then hired Jonathan M. Himmmelhoch, M.D. to examine the

court ruled that the petitioner would not be permitted to introduce expert testimony to refute this theory unless the State opened the door during direct examination of its witnesses.

The petitioner claims that although the State did not call any of the experts, it elicited testimony which used terms and concepts commonly associated with BSS[6] which should have served to "open the door" for his experts to testify. In particular, the petitioner points to the State's opening statement in which the prosecuting attorney stated that the relationship between the victim and petitioner were characterized by "power and control:"

> ...ladies and gentlemen of the jury, power, control, and jealousy. You are going to hear a lot about these traits today. You're going to hear how they affected the defendant, Michael Dennis, and how they caused him last summer to kidnap and sexually assault Rayna Sands...

> ...Once you hear all of the evidence about his power and control and jealousy, his desire to avoid the court proceeding on the 25th, this 'if I can't have her, then no one will attitude,' then we will ask you to return a verdict of guilty to all counts.

(Doc. 12-8, pg 30, 32.)

---

victim. Dr. Himmelhoch concluded that the victim did not demonstrate the traits or characteristics consistent with BSS. Instead, he concluded that Rayna "dramatizes events in her own life to her own benefit, readily and frequently manipulates and lies, and finally, has a propensity to...accuse said persons of whatever is necessary to avoid personal responsibility for her actions." When the Court ruled that Dr. Himmelhoch could not testify, the defense obtained Toya Cunningham, a lessor qualified expert, who also concluded that the victim did not fit the criteria for BSS. Finally, the Court "retained' its own expert, Denny Maceiko, for an independent evaluation. Mr. Maceiko also concluded that the victim did not demonstrate traits and characteristics consistent with BSS. His primary diagnosis was borderline personality disorder. (No citation available, as the petitioner did not provide transcripts from the Gentry Hearing or any written reports from any of the experts, and the undersigned is simply summarizing the petitioner's memorandum.)

[6]Utilizing the testimony from the <u>Gentry</u> Hearing, the petitioner asserts that BSS is characterized by power, control, violence, isolation, and the use of a child as a tool.

As well, the petitioner points to the testimony of the victim's grandmother which characterized the petitioner as being controlling and possessive of her granddaughter. The petitioner also asserts that the prosecuting attorney mentioned abuse in his opening statement and presented testimony from the victim's grandmother regarding abuse.[7] In addition, the petitioner asserts that the prosecuting attorney discussed the petitioner's efforts to isolate the victim,[8] and presented testimony from the victim and her grandmother that reiterated petitioner's efforts to use isolation as a means of control. Additionally, the petitioner asserts that the prosecuting attorney referred to the petitioner's use of the parties' child as a victim and elicited testimony from the victim regarding the same.[9] Finally, the petitioner alleges that the prosecuting attorney outlined a cycle of violence which was followed by testimony from the victim's grandmother that described the cycle of violence and emphasized the victim's helplessness.[10]

---

[7]In his opening statement, the prosecutor stated: "Then the violence began. The defendant would use violence to control Ms. Sands." (Doc. 12-8, pg. 30). The victim's grandmother testified that the petitioner would call her and say things like "I know you think I'm mean and abusive.." She also testified that in response to the petitioner's statement that "You've never seen a mark on her face," she replied: "Mike, you're too smart for that. You're not going to put a mark where I'll see it." (Doc. 12-10, pg. 160)

[8]The petitioner points to this sequence in prosecuting attorney's opening statement: "Soon after she began to date Mr. Dennis, she moved in with him. Mr. Dennis had a couple of roommates that were living with them. And this was one of the first signs of his jealousy and control. He told her not to even be around those roommates in her house, although she was living under the same roof." (Doc. 12-8, pg. 30)

[9]The petitioner identifies this portion of the prosecuting attorney's opening statement: "Later on, Rayna became pregnant with their child, Brenden. Once the baby was born, the defendant would use the baby to his favor to get what he wanted, to be used as a tool. (Doc. 12-10, pg. 113). With regard to the victim's testimony, the petitioner points to her testimony that the petitioner appeared jealous of the baby and in the months after the child's birth, things just kept getting worse and worse. (Tr. 12-10, pg. 854)

[10]In his opening statement, the prosecuting attorney said: "You will hear testimony about how Rayna, on multiple occasions, filed for a domestic violent [sic] protective order in Wetzel County against the defendant. You will hear that, on certain

The petitioner argues that by repeatedly using these "buzzwords" and concepts associated with BSS, the State opened the door to allowing in the testimony of the experts to refute the State's use of BSS. However, the Circuit Court ruled that the State had not opened the door and refused to allow the petitioner to present any expert testimony. On appeal, the WVSCA found that the " [t]he record shows that no testimony or other evidence was introduced during the trial which established a connection between the questioned terms or concepts and BWS[11], so we fail to see how the testimony was relevant and would serve to 'assist the trier of fact to understand the evidence'. The trial court wisely exercised discretion by excluding such testimony, which more likely would have confused rather than enlightened the jury." State v. Dennis, supra at 453 (citations omitted).

The Sixth Amendment affords all criminal defendants the right to confront witnesses against them. However, this right does not permit a defendant to introduce evidence to rebut a theory never advanced by the prosecution. In this case, the trial court and the appellate court determined that the State had not advanced the theory that the victim suffered from BSS. While the petitioner may be able to point out certain "buzzwords" that are found in the literature dealing with BSS, it is clear that the overall testimony over the three days of this trial centered on lay testimony outlining the victim's claim that the petitioner kidnapped her from her place of employment and sexually assaulted her. The victim's testimony established reasons, unrelated to BSS, as to why she did not attempt to escape despite the defense's assertion that she had many

occasions, Raina would drop those protective orders. And Raina will testify that the defendant told her that the violence would stop; he wouldn't do this anymore. He promised. But that wasn't the case." (Doc. 12-10. Pg. 114)

[11]The WVSCA referred to the concept as Battered Women's Syndrome rather than Battered Spouse Syndrome.

opportunities.  The decision not to permit the petitioner to present expert testimony was not unreasonable in light of the facts presented in the state proceeding nor was it contrary to or an unreasonable application of clearly established federal law.  Therefore, the petitioner is not entitled to relief on this claim.

**D.  Ground Four - The Petitioner Was Deprived Of His Right To Confront The Witnesses Against Him, To Cross Examine the Evidence, To Free Speech And To Speak In His Own Defense, And Due Process Rights Routinely Afforded Others, When The State Was Allowed To Present Unrelated Prior Bad Acts To The Jury, But He Was Prohibited From Presenting The Accuser's History Of Making False Rape And Kidnapping Allegations**

The petitioner claims that during trial, the State called various witnesses to testify to his claimed prior bad acts which were alleged to have happened in April 2001, on May 17, 2001, and on June 27, 2001.  The Circuit Court allowed those acts on the basis that they were part of the case or *res gestae*.  On appeal, the WVSCA agreed.

Quoting from a Sixth Circuit case, the petitioner argues that *res gestae* applies only where the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other." United States v. Robert, 548 F.2d 665, 667 (6th Cir.), cert. denied, 431 U.S. 920 (1977).  Furthermore, the petitioner argues that the WVSCA has observed that prior bad acts evidence is inherently prejudicial.  State v. McDaniel, 560 S.E.2d 484, 487 (W.Va..2001); State v. Zak, 513 S.E.2nd 484, 487 (W.Va. 2001).  Therefore, according to the petitioner, the WVSCA, like the Fourth Circuit, also has noted that Rule 404(b) type testimony should be elicited only where it helps to prove the charges, not where it merely bolsters the State's allegations.  See State v. Thomas, 203 S.E.2d 445, 456 (W.Va. 1974); United States v. Mastrototaro, 455 F.2d 802, 804 (1972).

The specific testimony to which the petitioner objects involves incidents which were alleged to have occurred in April 2001 and on May 17, 2001, and June 27, 2001. Specifically, the victim was permitted to testify that in April 2001, petitioner allegedly pushed her, struck her with a telephone cord, and restrained her against her will. (Doc. 12-13, pgs. 857-60) The victim also was permitted to testify that on May 17, 2001, she and a male friend were driving to the mall when the petitioner got into the car and forcibly kidnapped them (Doc. 12-13, pgs. 861-64) Finally, the victim was permitted to testify that on June 27, 2001, the petitioner allegedly tricked her out of her place of employment by claiming to have kidnapped their son or by threatening to kidnap their son. (Doc. 12-13, pgs. 865-66). She then described how he allegedly pulled her behind a building so the police would not see him. (Doc. 12-13, pg. 867) As well, the victim's grandmother was allowed to testify as to what the victim told her about the petitioner's actions on June 27, 2001. (Doc. 12-10, pgs. 163-64). Finally, two Wheeling police officers were permitted to describe arresting the petitioner on June 27, 2001, for violation of a protective order. (Doc. 12-10, pgs. 192-96; 209-12)

In ruling on the petitioner's challenge to the admissibility of this evidence, the trial court ruled that: "I'm going to hold that we do not need a *McGinnis* hearing[12], and all those [incidents] are admissible....because they basically are all part of the overall relationship between this gentleman and the defendant (sic). State v. Dennis, supra at 460. On appeal, the WVSCA noted that in determining whether the admissibility of evidence of other bad acts" is governed by Rule 404(b), the evidence must be examined to determine whether the evidence is "intrinsic" or

_____

[12]In State v. McGinnis, 455 S.E.2d 516 (W.Va. 1994), the WVSCA addressed the admissibility of evidence under Rule 404(b) of the West Virginia Rules of Evidence and established a specific standard for evaluating an offer of evidence under such rule.

"extrinsic". <u>Id.</u> at 461. The Court went on to state that if the proffer fits in the "intrinsic" category, "evidence of other crimes should not be suppressed when those facts come in as *res gestae* -as part and parcel of the proof charged in the indictment." <u>Id.</u> After reviewing the record, the Court concluded that the trial court did not abuse its discretion in finding that the prior acts constituted intrinsic evidence, not subject to Rule 404(b) analysis. In particular, the Court found that "[w]hile the acts were not part of a 'single criminal episode' or 'necessary preliminaries' to the charged offenses, it is difficult to conclude that the evidence was not necessary 'to complete the story of the crimes on trial' or otherwise provide context to the crimes charged." <u>Id.</u> (*quoting* <u>State v. LaRock</u>, 470 S.E.2d 613, 631 n.29 (W.Va. 1996)). Further the Court found that even if "the trial court erred in finding the prior act evidence to be *res gestae* we believe the evidence would still be admissible under Rule 404(b)" because it "would have satisfied a number of acceptable purposes set forth in Rule 404(b), including proving motive, opportunity and knowledge." <u>Id</u> at 461-62.

Although the respondent has attacked the rulings of the trial court and the WVSCA in broad terms of violating federal constitutional rights, it is clear that his argument is merely an attack on a state court ruling. However, violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable under §2254. <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991). The petitioner has made no showing that the admission of this evidence violated any specific constitutional guarantee nor that the evidence rendered his trial so fundamentally unfair as to violate due process. According, he is entitled to no relief on this ground.

Furthermore, to the extent that the petitioner is raising a habeas claim that he was prohibited from presenting the victim's history of making false rape and kidnapping allegations

the claim is barred under the doctrine of exhaustion. The exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.) (citing Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), cert. denied, 523 U.S. 371 (1998). Here, the petitioner did not raise this issue in his appeal, and hence it is raised for the first time in his § 2254 petition. Accordingly, the same is unexhausted, and this Court cannot address its merits.

**E.   Ground Five - The Petitioner Was Deprived Of His Sixth Amendment Rights of Confrontation, Cross-Examination, And Assistance of Counsel By Remarks Made By The Prosecuting Attorney**

The petitioner contends that the prosecuting attorney made four comments during closing arguments that were each highly prejudicial. Furthermore, the petitioner argues that by making these remarks in its closing statement, rather than by presenting them through witnesses at trial, his attorney could not cross-examine these remarks and could not present contrary evidence. Therefore, the petitioner maintains that he was deprived of his Sixth Amendments rights of confrontation, cross-examination, and assistance of counsel, and the court's failure to issue corrective instructions or order a mistrial, affirmed that deprivation.

The State argues that because the petitioner's trial counsel failed to contemporaneously object to these comments, his claim is procedurally defaulted, and trial counsel's post-argument objections did not preserve the issue for appeal. The rule in West Virginia appears to be that:

> Remarks of counsel in an argument to the jury, regarded as improper and harmful to the opposing party, should be at once objected to, and the trial court given an opportunity to rule on the objection, and if possible counter-act the effect thereof upon the minds of the jury, else the error will be regarded as waived, if afterwards urged as ground for setting aside the verdict and for a new trial.

Curfman v. Monongahela West Penn Public Service Co., 166 S.E.2d 848, 853 (W.Va. 1932), quoting, Given v. Diamond Shoe & Garment Co., 101 S.E. 153 (W.Va. 1919). Therefore, the petitioner's claim of prosecutorial misconduct may be procedurally barred. However, even if not barred, the claim fails on its merits.

Improper prosecutorial arguments violate due process only where they render the proceedings fundamentally unfair. Bennett v. Angelone, 92 F.3d 1336, 1345 (4th Cir. 1996). In making this determination, the court "must look at the nature and quantum of the evidence before the jury, the arguments of opposing counsel, the judge's charge, and whether the errors were isolated or repeated." Id. at 1345-46 (internal quotation marks and citations omitted). In the instant case, the petitioner points to four specific statements made by the prosecutor in his closing or rebuttal statement.

The first statement made by the prosecutor which the petitioner raises as error is: "you were told, listen, if anything - these aren't my words - there was a gentle sexual assault." (Doc. 12-15, pg. 1214) The petitioner argues that this comment was made to mislead the jury by creating the impression that the defense admitted to the sexual assault, but wanted to explain the sexual assault away as being gentle. However, the statement must be read in the context of trial counsel's opening statement that the lack of bruising on the victim was inconsistent with her story of being forcibly raped.[13] Furthermore, the petitioner fails to include the entirety of the prosecutor's statement which continued with: You can look at these pictures and think about Nurse Grimm's

_____

[13]Specifically, petitioner's trial counsel made the following statement in his opening argument: "They are going to bring in some doctors regarding this horrible rape-excuse me, this sexual assault which occurred at Barkcamp. I have no way of putting it delicately, but please don't take offense at mor (sic) or Michael. It must have been a very gentle sexual assault. There's no horrible bruising. No bleeding. Nothing. (Doc. 12-9, pgs. 136-37)

testimony and decide if that's true." (Doc. 12-15, pg. 1214) Therefore, a fair reading of this statement does not necessarily imply that the prosecutor claimed the petitioner admitted to the assault.

The second comment which the petitioner raises as error occurred in the State's rebuttal closing. Trial counsel, in his closing, stated that the fact the petitioner "even knew that Officer Smith has been at Applebee's indicated that [he] had been at Applebee's when Officer Smith was there.[14] In rebuttal, the prosecutor attempted to counter this argument by providing an explanation for how the petitioner knew Officer Smith had been at Applebee's:

> How would Michael know the police officer might have been eating lunch over there? How would Michael know? Is what you were asked? One way is somebody else saw the police officer over there and let Mr. Dennis know about it.

(Doc. 12-15, pg. 1225) After closing statements were completed, and the jury had begun deliberations, trial counsel objected to this comment. (Doc. 12-15, pg. 1261) The trial court noted that had the objection been raised contemporaneously he would have said that, "be it closing or closing statement, whatever you want to call it, must be based on the evidence. There was no evidence as to anybody else telling Mr. Dennis that. But no objection was made; therefore, I didn't have that opportunity. I don't really see it as this point as being an outrageous statement,

---

[14]On the day of the alleged assault, the petitioner claimed that the victim willingly accompanied him, and they went to Applebee's for lunch. (Doc. 12-15, pg. 1101) The victim admitted having been to Applebee's, but denied that it was on the day of the alleged abduction. (Doc. 12-13, pg. 895; Doc. 12-14, pg. 918) As proof that they were there, the petitioner claimed that while eating at Applebee's he saw Officer Smith eating with his family. (Doc. 12-15, pg. 1102) During trial, Officer Smith confirmed that he was at Aplebee's for lunch one time around that date, although he could not say for sure what the exact date was. He also testified that he did not see the petitioner at the restaurant and never told anyone that he did see the petitioner. (Doc. 12-14, pgs. 1072-76).

but your objection is noted." (Doc. 12-15, pg. 1261) While this statement may have been improper, that does not, in and of itself, require this Court to grant the petitioner relief. The ultimate inquiry is whether the improper comments or actions "so infected the trail with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Furthermore, the Supreme Court has noted that "the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor," Smith v. Phillips, 455 U.S. 209. 219 (1982), and that the "appropriate standard of review for ... a claim [of prosecutorial misconduct] on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power. Darden, 477 U.S. at 181 (internal quotations omitted). Moreover, the Supreme Court has clearly indicated that the state courts have substantial latitude when considering prosecutorial misconduct claims because "constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise." Donelly, supra at 645. Here, the West Virginia Supreme Court determined that the "remarks made by the prosecutor did 'not clearly prejudice the accused or result in manifest injustice' so as to warrant reversal of the convictions."[15] Dennis, supra at 357, citing Syl Pt. 5, State v. Ocheltree, 289 S.E.2d 742 (W.Va. 1982). Inasmuch as this improper comment, in the contest of the evidence against the petitioner, was not deliberate or sufficiently prejudicial to warrant a new trial, the West Virginia Supreme Court did not unreasonably apply applicable federal law.

The third comment to which the petitioner objects occurred as the result of what he characterizes at the state's efforts to draw attention from a lie allegedly told by the victim. The

---

[15]The two remarks the Court referred to were, first, the one regarding Officer Smith and, second, comments involving argument from the State in response to trial counsel's criticism of the police's efforts. The petitioner did not object to the second set of comments in his § 2254 petition.

events surrounding the plaintiff's arrest and subsequent trial began on July 23, 2001, and concluded the next day, the 24th. The petitioner alleged that he and the victim were together at a bar on July 22nd and that the issue of marriage was discussed. The victim, while remembering going to that bar, stated that she did not believe it was that close in time to the 23rd, and denied that they talked about marriage at that time.[16] (Doc. 12-13, pgs. 897-98) In his opening statement, trial counsel stated that " a day or two prior to [the victim's story], she proposed or desired to marry Michael Dennis. She did this in the presence of Stacey Willey and a Tammy Willey in a bar called 'Lambly's', which is located somewhere between Wetzel and Tyler County. We're going to bring in these folks , and they'll sit in that chair and tell you that is what Raina wanted to do." (Doc. 12-9, pg. 130) Only Stacey Willey was called to testify. In his closing statement, the prosecuting attorney stated: "You were told that a witness would say that [the victim] proposed marriage to Michael. It happens at that bar in Wetzel County. No one said that." (Doc. 12-15, pg. 1214) This statement is not clearly improper. The witness, Stacey Willey, testified that she saw the petitioner and the victim at Lamlicks around the time of July 22, 2001. She also testified that they were there with another couple. She further testified that the victim and the other woman were "talking about getting - they were - both couples were getting married the next morning." (Doc. 12-14, 1080). In addition, in response to a question about who brought up the topic of marriage, Ms. Willey stated: "While I was sitting there, [the victim] was the one talking about it." (Doc. 12-14, pg. 1080) Given this testimony, the prosecuting attorney did not make a clearly improper statement. The witness, in fact, did not state that the victim had proposed marriage to the

---

[16]She did, however, acknowledge that they had previously talked about marriage..."when we were still together and happy." (Doc. 12-13, pg. 898)

petitioner. Furthermore, even if improper, the statement was not so prejudicial as to warrant a mistrial or reversal on appeal.

The final comment by the prosecutor which the petitioner claims was prejudicial was as follows:

> You were told that three witnesses would testify on behalf of the defendant that they did not observe any bulge on Mr. Dennis. There was no way he was carrying a gun, and it would have been – it was impossible that he was carrying a gun. Did you hear those three witnesses?

(Doc. 12-15, pg. 1214). The petitioner claims that this statement was a request that the jury conclude that the petitioner had a gun when he came to the victim's place of employment on July 23, 2001, because no witnesses stated that they did not see a gun. In fact, the prosecutor's statement was almost a verbatim summary of trial counsel's opening statement in which he said:

> Keep in mind, [the victim's] story is that Michael had somehow a gun in his shorts or underneath his shirt. You're going to hear from these three witnesses there's no way that Michael was carrying any sort of gun or weapon. There was no bulge.

(Doc. 12-9, pg. 125). Inasmuch as none of three witnesses testified that they did nor did not see a bulge on the petitioner, nor did they testify that it was impossible that he was carrying a gun, the statement by the prosecuting attorney reminding them that trial counsel had indicated that such testimony would be forthcoming, but in fact was not, is not improper and clearly not prejudicial.

**F.   Ground Six - The Petitioner Was Deprived Of His Sixth Amendment Rights Of Confrontation And Cross-Examination, By The State's Unfair Bolstering Of The Accuser's Testimony By Multiple Witnesses**

Briefly stated, the petitioner alleges that he was deprived of his Sixth Amendment protections when the Circuit Court allowed the State to unfairly bolster the victim's testimony by

allowing seven different State witnesses to repeat her story to the jury. The petitioner alleges that the State had seven different witnesses read or repeat the victim's statement to the jury. The petitioner further alleges that the State introduced these under the theory that witnesses were not testifying to the truth of the statement itself, but only to show what the witnesses did in response to hearing the statement. However, while the petitioner acknowledges that such an exception to the hearsay rule is recognized in West Virginia, he argues that it does not apply in this instance.

As the WVSCA noted in its opinion, the petitioner's claim involves the testimony of seven of the state's witnesses. However, trial counsel failed to object when three of the witnesses testified. Rule 103 of the West Virginia Rules of Evidence provides that: [e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and...[i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record..." Accordingly, the petitioner failed to preserve his right to appeal his objections to these three witness and procedurally defaulted that portion of his claim.[17]

With regard to the remaining four witnesses, whom the petitioner alleges testified to inappropriate hearsay, there is no error affording him § 2254 relief. As the WVSCA noted, the questioned testimony of one of the witnesses, Officer Kimbel, did not involve the statement of the victim but rather that of the victim's grandmother when called the police to report the kidnapping. (Doc. 12-10, pg. 216-19) The WVCSA found that this testimony did not amount to hearsay because the officer simply testified to what he heard during that conversation and what he did as result of what he heard. In addition, although Officer Nohe, a Marietta police officer, was

---

[17]"Errors assigned for the first time on appeal will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court had objection been raised there." State v. Dennis, 607 S.E.2d 437, 460 (W.Va. 2004), citing Syl Pt. 17, State v. Thomas, 203 S.E. 2d 445 (1974).

allowed to read the victim's statement into the record, he was permitted to do so only after trial counsel, during cross-examination, had the officer read from the statement. The WVSCA noted that "[w]hether or not testimony involves impermissible heresay, a party "will not be permitted to complain of error in the admission of evidence which he offered or elicited[.]" <u>Dennis</u>, <u>supra</u> at 460, citing Syl. Pt. 2, in part, <u>State v. Bowman</u>, 184 S.E.2d 314 (1971). As well, the WVSCA found the trial court's admission of the heresay testimony of the gas station mechanic appropriate under the excited utterance exception to the rules against the admission of heresay pursuant to Rule 803(2) of the West Virginia Rules of Evidence. As the WVSCA noted, prior to relating any heresay statements, the mechanic described the victim as "hysterical, screaming. She was crying. Sweat was running off her where could just tell she was upset and she just-like I said, hysterical." <u>Id</u>. at 461. The WVSCA determined that this was a sufficient foundation from which the trial court could conclude that the out-of-court statement was admissible as an excited utterance, and thus an exception to the heresay rule. Finally, as to the testimony of Officer Mackey, a Wheeling police officer, the WVSCA found that his testimony recounting the victim's statements involving her rape, helped explain why the officer went to Barkcamp and collected evidence there. In addition, the WVSCA found that the jury was instructed as the limited purpose of the recitation of the victim's out-of-court statements. Therefore, the WVSCA found no error.

Here, the petitioner has not shown that the State court's decision on the admission of heresay testimony was in "square conflict" with controlling federal precedent (i.e., that it rested on a unreasonable derivation of legal principles from relevant federal Supreme Court precedent), nor has he shown that it involved an unreasonable application of established legal principles to new facts. Therefore, the petitioner has failed to establish a ground for relief under 28 U.S.C. § 2254.

### G. Ground Seven - The Totality Of The Violations Amounts To Such Prejudice Against the Defendant That His Incarceration Is Fundamentally Unjust

"The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. The purpose of a cumulative-error analysis is to address that possibility." United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990). However, "legitimate cumulative-error analysis evaluated only the effects of matters actually determined to be constitutional error." Fisher v. Angelone, 163 F.2d 835, 853 n.9 (4th Cir. 1998). Having found no error, no cumulative effect exists that would entitle the petitioner to habeas relief on this ground.

### V. Recommendation

For the foregoing reasons, it hereby RECOMMENDED that the respondent's Consolidated Motion to Dismiss and for Summary Judgment (Doc. 10) be **GRANTED**, and the petitioner's §2254 petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this Recommendation, any party may filed with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, Senior United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgement of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984);

The Clerk of the Court is directed to mail a copy of this Recommendation to counsel of record.

Dated: February 13, 2007

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE